CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.

Proposed Counsel for The College of New Rochelle

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
                                                          :
In re:                                                    :    Chapter 11
                                                          :
THE COLLEGE OF NEW ROCHELLE,                              :    Case No.
                                                          :
                                                          :
                         Debtor.                          :
                                                          :
-------------------------------------------------------------------x

### APPLICATION FOR ORDER UNDER 28 U.S.C. § 156(c) AND RULE 5075-1 OF THE LOCAL BANKRUPTCY RULES APPOINTING KURTZMAN CARSON CONSULTANTS LLC AS NOTICE AND CLAIMS <u>AGENT FOR THE DEBTOR</u>

TO THE HONORABLE ROBERT D. DRAIN, UNITED STATES BANKRUPTCY JUDGE:

The College of New Rochelle ("Debtor"), debtor and debtor-in-possession herein, as and for its application to employ notice and claims agent, respectfully represent as follows:

### <u>Jurisdiction</u>

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012. The Debtor confirms their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), to the entry of a final

order by the Court in connection with this Section 156(c) Application to the extent that it is later

determined that the Court, absent consent of the parties, cannot enter final orders or judgments in

connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Introduction

3.      On September 20, 2019 (the "Petition Date"), the Debtor commenced a case

under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor is

authorized to continue to operate its business and manage its properties as a debtor in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      No official committee of unsecured creditors has yet been appointed by the Office

of the United States Trustee for the Southern District of New York (the "U.S. Trustee") in this

chapter 11 case.

5.      Simultaneously with the filing of its petition, the Debtor filed the Affidavit of

Mark Podgainy pursuant to Local Bankruptcy Rule 1007-2 (the "Podgainy Affidavit").  A more

detailed factual background of the Debtor's business and operations, as well as the events

leading to the filing of this chapter 11 case, is more fully set forth in the Podgainy Affidavit, the

contents of which are incorporated herein by reference.

## Relief Requested

6.      By this Application, the Debtor respectfully requests entry of an order, pursuant to

28 U.S.C. § 156(c) and Local Bankruptcy Rule 5075-1 of the Southern District of New York,

appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent (the

"Notice and Claims Agent") in this Chapter 11 case pursuant to the agreement (the "KCC

Agreement") attached hereto as Exhibit "A". The Debtor's selection of KCC to act as the claims

and noticing agent has satisfied the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*, in that the Debtor has obtained and reviewed engagement proposals from at least two (2) other court-approved claims and noticing agents to ensure selection through a competitive process. Moreover, the Debtor submits, based on all engagement proposals obtained and reviewed, that KCC's rates are competitive and reasonable given KCC's quality of services and expertise.

## Applicable Authority

7. Section 156(c) of title 28 of the United States Code provides, in relevant part, as follows:

> (a) Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate . . .

28 U.S.C. §156(c).

8. In addition, Local Bankruptcy Rule 5075-1(a) provides, in relevant part, as follows:

> (a) The Court may direct, subject to supervision of the Clerk, the use of agents either on or off the Court's premises to file Court records, either by paper or electronic means, to issue notices, to maintain case dockets, to maintain Judges' calendars, and to maintain and disseminate other administrative information where the costs of such facilities or services are paid for by the estate.

## Basis for Relief

9. The hundreds of creditors and other parties in interest involved in the Debtor's Chapter 11 case may impose heavy administrative and other burdens on the Court and the Office of the Clerk of the Court (the "Clerk's Office"). To relieve the Clerk's Office of these burdens,

the Debtor seeks an Order appointing KCC as the notice and claims agent in the Debtor's case. Indeed, because of the number of creditors in this case, a notice and claims agent is required.

10.     Although the Debtor has not yet filed its schedules of assets and liabilities, they anticipate that there will be many hundreds of entities to be noticed.  Local Rule 5075-1(b) provides that "[i]n a case in which the number of creditors and equity security holders, in the aggregate, is 250 or more, the estate shall retain, subject to approval of the Bankruptcy Court, a claims and noticing agent in accordance with the [Claims Agent Protocol]."  In view of the number of anticipated claimants, the Debtor submits that the appointment of a claims and noticing agent is required by Local Rule 5075-1(b) and is otherwise in the best interests of the Debtor's estate and its creditors.

11.     By retaining KCC, the Debtor's estate and particularly the creditors will benefit from KCC acting as notice and claims agent from the efficient and cost-effective methods that KCC has developed.

12.     KCC is fully equipped to handle the volume of mailing involved in properly sending the required notices to and processing the claims of creditors and other interested parties in this case. KCC will follow the notice and claim procedures that conform to the guidelines promulgated by the Clerk's Office and the Judicial Conference and as may be entered by this Court's order.

13.     KCC is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large chapter 11 cases. KCC's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. KCC has acted as official claims and noticing agent in many large bankruptcy cases in this

district and in other districts nationwide. KCC's active cases include: *In re Windstream Holdings, Inc., et al.*, Case No. 19-22312(RDD) (Bankr. S.D.N.Y. Feb. 25, 2019); *In re Waypoint Leasing Holdings Ltd.*, Case No. 18-13648 (SMB) (Bankr. S.D.N.Y. Nov. 27, 2018); *In re VER Technologies Holdco LLC,* Case No. 18-10834 (KG) (Bankr. D. Del. Apr. 6, 2018); *In re ExGen Tex. Power, LLC*, Case No. 17-12377 (BLS) (Bankr. D. Del. Nov. 7, 2017); *In re TerraVia Holdings, Inc.*, Case No. 17-11655 (CSS) (Bankr. D. Del. Aug. 2, 2017); *In re 21st Century Oncology Holdings, Inc.*, Case No. 17-22770 (RDD) (Bankr. S.D.N.Y. July 20, 2017); *In re Keystone Tube Co., LLC (A.M Castle & Co.)*, Case No. 17-11330 (LSS) (Bankr. D. Del. June 18, 2017); *In re Aquion Energy, Inc.,* Case No. 17-10500 (KJC) (Bankr. D. Del. Mar. 8, 2017); *In re EO Liquidating, LLC (Ilk/a Eastern Outfitters, LLC),* Case No. 17-10243 (LSS) (Bankr. D. Del. Feb. 5, 2017); *In re Toisa Limited*, Case No. 17-10184 (SCC) (Bankr. S.D.N.Y. January 31, 2017); *In re AOG Entertainment, Inc.*, Case No. 16-11090 (SMB) (Bankr. S.D.N.Y. May 2, 2016); *In re Chaparral Energy, Inc.,* Case No. 16-11144 (LSS) (Bankr. D. Del. May 9, 2016); and *In re Vestis Retail Grp., LLC*, Case No. 16-`0971 (CSS) (Bankr. D. Del. Apr. 19, 2016); and *In re MPM Silicones, LLC*, Case No. 14-22503 (RDD) (Bankr. S.D.N.Y. April 15, 2014).

14.    This Section 156(c) Application pertains only to the work to be performed by KCC under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and S.D.N.Y. LBR 5075-1, and any work to be performed by KCC outside of this scope is not covered by this Section 156(c) Application or by any Order granting approval hereof. Specifically, KCC will perform the following tasks in its role as claims and noticing agent (the "Claims and Noticing Services"), as well as all quality control relating thereto:

        a.    prepare and serve required notices and documents in this case, which may include:

(1)     notice of the commencement of this case and the initial meeting of creditors pursuant to section 341(a) of the Bankruptcy Code;

(2)     notice of the deadline to file proofs of claim or interests;

(3)     notice of transfers of claims

(4)     notice of objections to claims and objections to transfers of claims;

(5)     notice of any hearings on a disclosure statement and confirmation of a plan of reorganization, including under Bankruptcy Rule 3017(d);

(6)     notice of the effective date of any plan, and

(7)     all other notices, orders, pleadings, publications and other documents as the Debtor or the Court may deem necessary or appropriate for an orderly administration of this case;

b.      maintain an official copy of the Debtor's schedule of assets and liabilities and statements of financial affairs (collectively the "Schedules"), listing the Debtor's known creditors and the amounts owed thereto;

c.      maintain (i) a list of all potential creditors, and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update and make said lists available upon request by a party-in-interest or the Clerk;

d.      furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

e.      maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f.      for *all* notices, motions, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket numbers and titles of the pleadings served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

g.    receive and record proofs of claim and proofs of interest filed, including those received by the Clerk, and maintain the original proofs of claim in a secure area;

h.    provide an electronic interface for filing proofs of claim;

i.    create and maintain the official claims register (the "Claims Register"), including, on behalf of the Clerk on a case specific website; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each proof of claim or proof of interest:

(1)    the name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;

(2)    the date received;

(3)    the claim number assigned;

(4)    the asserted amount and classification of the claim; and

(5)    any disposition of the claim.

j.    implement necessary security measures to ensure the completeness and integrity of the Claims Register and safekeeping of the original claims;

k.    transmit to the Clerk's Office **copies** of the Claims Registers upon request and at agreed upon intervals;

l.    relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of KCC, not less than weekly;

m.    monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Registers;

n.    provide public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

o.    record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e) to the extent that such transfers are properly filed and clearly identify the claim to be transferred;

p.    assist in the dissemination of information to the public and respond to requests for administrative information regarding these chapter 11 cases as directed by the Debtor or the Court, including through the use of a case website and/or call center;

q.    comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements;

s.    if the case is converted to chapter 7, contact the Clerk's Office within three (3) days of the notice to KCC of entry of the order converting the case;

t.    provide temporary employees to process claims, as necessary;

u.    promptly comply with such further conditions and requirements as the Clerk's Office or the Court may at any time prescribe;

v.    perform such other administrative and support services related to noticing, claims, docketing, solicitation and distribution as the Debtor or the Clerk's Office may request;

w.    thirty (30) days prior to the close of the Chapter 11 case, an order dismissing KCC shall be submitted by the Debtor terminating the services of KCC upon completion of its duties and responsibilities and upon the closing of the case;

x.    within seven (7) days of notice to KCC of entry of an order closing the chapter 11 case, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the chapter 11 case; and

y.    at the close of the case, box and transport all original documents in proper format, as provided by the Clerk's office, to (i) the Federal Archives and Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk's Office.

### KCC's Disinterestedness

15.    To the best of the Debtor's knowledge, and except as disclosed in the Declaration of Evan Gershbein, attached hereto as Exhibit "B", KCC (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, and (b) does not hold or represent an interest adverse to the Debtor's estates.

16.    KCC will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new facts or relationships are discovered, KCC will supplement its disclosure to the Court.

17.     In connection with its retention as notice and claims agent, KCC represents, among other things, that:

    a.    KCC is not a creditor of the Debtor;

    b.    KCC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the claims and noticing agent in the Chapter 11 case;

    c.    by accepting employment in the Chapter 11 case, KCC waives any rights to receive compensation from the United States government;

    d.    in its capacity as the claims and noticing agent in this chapter 11 case, KCC will not be an agent of the United States and will not act on behalf of the United States;

    e.    KCC will not employ any past or present employees of the Debtor in connection with its work as the notice and claims agent in the Chapter 11 case;

    f.    KCC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

    g.    in its capacity as the Notice and Claims Agent in this chapter 11 case, KCC will not intentionally misrepresent any fact to any person;

    h.    KCC shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claims transfers;

    i.    KCC will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

    j.    none of the services provided by KCC as the Notice and Claims Agent in this chapter 11 case shall be at the expense of the Clerk's office.

## KCC's Compensation

18.    The Debtor proposes to retain KCC at the rates set forth in the KCC Agreement. No charge shall be incurred by KCC unless specifically authorized by the Debtor.  The cost of KCC's services will be paid from the Debtor's estate as provided by 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court. The Debtor believes that the proposed rates to be charged by KCC are reasonable and appropriate for services of this nature. The Debtor reviewed the rates of other firms prior to selecting KCC and believe KCC's rates are reasonable given the quality of their services.  KCC agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtor, the office of the United States Trustee, counsel for the Debtor, counsel for any official committee, if any, monitoring the expenses of the Debtor and any party-in-interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

19.    Prior to the Petition Date, the Debtor provided KCC a retainer in the amount of $10,000.  KCC seeks to first apply the retainer to all pre-petition invoices, and thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the KCC Agreement during this chapter 11 case as security for the payment of fees and expenses incurred under the KCC Agreement.

20.    Additionally, under the terms of the KCC Agreement, the Debtor has agreed to indemnify, defend, and hold harmless KCC and its members, officers, employees,

representatives, and agents under certain circumstances specified in the KCC Agreement, except in circumstances resulting solely from KCC's gross negligence or willful misconduct or as otherwise provided in the KCC Agreement or Retention Order. The Debtor believes that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in this Chapter 11 case.

The Debtor requests that the undisputed fees and expenses KCC incurs in the performance of the above services be treated as an administrative expense of the Debtor's and be paid by the Debtor in the ordinary course of business without further application to the Court. KCC agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtor, the office of the United States Trustee, counsel for the Debtor, counsel for any official committee, if any, monitoring the expenses of the Debtor and any party-in-interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

21.    KCC will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

### Compliance with Claims and Noticing Agent Protocol

22.    This Section 156(c) Application complies with the Claims Agent Protocol and substantially conforms to the standard section 156(c) application in use in this Court. The Debtor has provided copies of this Section 156(c) Application to the Clerk of Court and to the United States Trustee and submits that no further notice is necessary under the circumstances.

To the extent that there is any inconsistency between this Section 156(c) Application, the Retention Order, and the KCC Agreement, the Retention Order shall govern.

**Notice**

23.    No trustee or examiner has been appointed in this Chapter 11 case. Notice of this Application has been given to the U.S. Trustee and the Clerk's Office and in light of the nature of the relief requested herein, the Debtor submits that no other or further notice need be given.

**No Prior Request**

24.    No prior Application for the relief requested herein has been made to this or any other Court.

**WHEREFORE**, the Debtor requests entry of an order, pursuant to 28 U.S.C. § 156(c) substantially in the form attached hereto (1) authorizing and approving the appointment of KCC as claims and noticing agent, for the maintenance and processing of claims and the distribution of notices and (2) granting such other and further relief as is just and proper.

Dated:  Garden City, New York
        September 20, 2019

                                CULLEN AND DYKMAN LLP
                                Attorneys for Debtor


                                By:  /s/Bonnie L. Pollack
                                    Mathew G. Roseman, Esq.
                                    Bonnie L. Pollack, Esq.
                                    100 Quentin Roosevelt Boulevard
                                    Garden City, NY 11530
                                    (516) 357-3700

**EXHIBIT A**



1290 Avenue of the Americas
New York, NY 10104

June 28, 2019

Ms. Bonnie Pollack, Esq.
Cullen and Dykman LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530

Dear Bonnie:

We appreciate the opportunity to submit a proposal to you and your client (the "Company") in support of the Company's proposed restructuring. As noted in more detail within the enclosed Summary of Services, KCC's experienced team and leading technology can assist the Company (on an as-needed basis) with, among other things, pre-filing preparation, programming and maintaining a case-specific website, call center support services, noticing and claims administration services, balloting and tabulation services, as well as escrow and disbursement services.

If KCC is selected, we assure you that you will benefit from the following:

Upfront Reduced Fee: *As a courtesy to you and your colleagues at Cullen and Dykman and as reflected in the fee structure attached, we have reduced our standard hourly rates by 15% and printing fees by 20%.* These upfront fee concessions will result in *meaningful* cost savings over the course of the engagement.

Experience: KCC has been the leading court-appointed administration agent since its formation in 2001 with over 500 restructurings in 80 different jurisdictions. Having managed this breadth of chapter 11 cases, KCC brings *unparalleled* professional experience to bear - including significant experience in the Southern District of New York, including Windstream Holdings, Waypoint Leasing, 21st Century Oncology and Westinghouse Electric, and in working with non-profit entities, including Credit Management Associates, Roman Catholic Bishop of Stockton and Amsterdam House Continuing Care Retirement Community.

Bandwidth: KCC fields a deep bench of experienced staff that have been with us for an average of *12 years*; we were around during the last distressed cycle and are battle-tested. And we have the bandwidth to dedicate top resources to this engagement. For my part, I have over 26 years of restructuring experience. I will personally supervise this matter; our job is to help eliminate any process risk that might otherwise divert time away from restructuring the Company's business.

Advanced Technology: KCC's technology platform has evolved considerably over the years and *significantly since the appearance of new competitors*; we continue to invest in further developing our technology to promote the most efficient and cost-effective administration in the market. Our technology complements our experienced case teams by automating certain tasks so that clients save money and human error is eliminated. A few of KCC's key technology features include: fully automated mirror case dockets; personalized, automated and filterable docket subscription emails of relevant case filings; an electronic solicitation platform; and an electronic proof of claim filing platform. For authorized users, KCC provides 24 hour, secure, unique access to our proprietary CaseView technology, which, among other things, supplies automated real time case analytics of the claims and voting processes. KCC has also made heavy investments in general data security to ensure that proprietary and/or confidential client data is safe and secure throughout the course of the case. **Attached please see a chart of KCC's automated features that add value to the client at no additional cost.**



1290 Avenue of the Americas
New York, NY 10104

**Escrow Services:** Leveraging off of our parent company Computershare's economies of scale (see Scale below), KCC's Trustee and Fiduciary Services (TFS) division offers escrow agent services that provides clients with (i) highly competitive rates, (ii) limited-to-no upfront fees, (iii) a number of UST approved banks and (iv) automated UST compliant reporting.  This offering has provided our clients with preferable economics and reduced the administrative burden of holding these funds relative to traditional escrow account providers in the restructuring/corporate space. For example, we recently set up escrow accounts for Alpha Natural Resources, Chaparral Energy, AOG Entertainment, VER Technologies, Westinghouse and Toisa Shipbuilding, among others.  For a restructuring that may include a 363 sale of some or all of the Company's assets, this team, in tandem with our core claims, noticing and solicitation services, helps consolidate multiple useful offerings under one roof.

**Strategic Communications & Call Center Support Services:** KCC's strategic communications platform and call center is run by Joe Bunning who has over 15 years of experience in corporate restructuring.  With full service communication support services, our experienced staff can provide assistance with messaging to all relevant constituencies, both internally and externally.  Our call center can provide answers to frequently asked questions, manage claim form or other document requests and provide general case information.  KCC's award-winning call center, recognized for customer excellence and satisfaction, consists of 900 seats, staffed by specialists who can respond to inquiries in 27 languages and 24 hours a day, 7 days a week.  Recent completed large volume call centers include: *Southcross Holdings, 21st Century Oncology, Peabody Energy, Vestis Retail Group, Walter Energy, Rue21* and *Sports Authority*. Recently completed strategic communications assignments include: *American Tire Distributors, Verity Health Systems* and *Real Mex Restaurants.*

**Scale:** KCC's parent company, Computershare, is a $6 billion dollar company and a global market leader in transfer agency and share registration, employee equity plans, proxy solicitation and stakeholder communications. Computershare's scale enables KCC to provide its clients with expanded *and cost-effective* document production services, partner with services providers (e.g., FedEx) for discounted services and leverage national and international reach with offices in Los Angeles, New York, throughout Europe, Asia and Australia.  No competitor has the ability to leverage scale in a way that can pass through this level of savings to its clients.

We invite you to review the enclosed Summary of Services to get better understanding on how KCC can assist the Company in this matter.  In addition to our fee structure, we have also included biographies of the executive team who will oversee this matter and a representative one pager of our recent middle market cases for your review.  KCC is well positioned to handle your matter and immediately available to discuss any questions you may have regarding our services, staffing or pricing.

We appreciate the opportunity to submit this proposal and look forward to hearing from you soon. I can be reached, at your convenience, on my mobile at 310-824-3269.

Regards,

Francine Gordon Durrer
Managing Director, Corporate Restructuring
(310) 824-3269
fgordon@kccllc.com



1290 Avenue of the Americas
New York, NY 10104

## SUMMARY OF SERVICES

In more detail, KCC's team assists clients with:

### Pre-Filing Preparation Services (and website setup)

KCC's team of consultants assists with, among other tasks:

- Creditor matrix compilation and relevant notice party list creation
- The design and execution of first-day noticing campaigns
- Creating and hosting a case-specific website to provide access to information and documents to creditors and to the general public upon filing of a chapter 11 case
- Preparation of bankruptcy petitions

### Call Center Support Services

KCC provides full service communication support services for companies and professionals engaged in corporate restructuring matters. Our experienced staff can provide answers to frequently asked questions, claim forms or other document requests and general case information. KCC's award-winning call center, recognized for customer excellence and satisfaction, consists of 900 seats, staffed by specialists who can respond to inquiries in 27 languages and 24 hours a day, 7 days a week. KCC's Call Center Support Services include:

- Set-up and maintenance of dedicated toll-free numbers that are staffed with knowledgeable specialists
- Tracking, recording and reporting of all inbound and outbound call center activity related to a specific case
- Delivering consistent messaging with scripted responses and real-time access to case data to ensure inquiries are addressed according to case developments
- Deploying IVR (Interactive Voice Response) systems, where appropriate, to educate creditors on important dates and general case information

### Noticing Services

KCC is the only claims agent with its own production facility in Memphis, Tennessee that offers exclusive shipping discounts to clients through our partnership with FedEx, the latest document submission times in the industry and experienced production specialists who have been trained to handle the intricacies of chapter 11 cases. KCC's team works closely with the company and its professionals to offer:

- Timely distribution of all necessary notices and other pleadings – including first-day documents, creditor meeting notices, bar date notices and plan and disclosure statement notices
- Seamless production operations that work collaboratively with your in-house resources

### Claims Administration Services

Through our proprietary technology, KCC CaseView, we streamline and offer help throughout the claims administration process with:

- Creating and distributing personalized claim forms to creditors and other interested parties
- Providing claim-activity reports through KCC CaseView once claims are date-stamped and scanned
- Coordinating receipt of proofs of claim filed with the Court
- Providing secure storage for all original proofs of claim and maintaining the official claims register
- Schedules and SOFA preparation



1290 Avenue of the Americas
New York, NY 10104

**Public Securities Management Services**
KCC assists with administering complex (domestic and international) transactions involving publicly traded securities by:
- Identifying appropriate shareholders to receive notices as well as distributing solicitation procedures for securities voting
- Serving as an information agent for exchange and tender offers
- Facilitating rights offerings/subscriptions, consents and treatment elections

**Balloting & Tabulation Services**
KCC devises appropriate strategies to ensure efficient and effective solicitation procedures. KCC can:
- Facilitate the design and printing of customized ballots
- Coordinate investor outreach initiatives
- After ballots are mailed and returned, track the voting process, offer insight into voting trends and provide access to final results

**Disbursement Services**
As Disbursing Agent, KCC works with professionals to develop a strategic approach to the distribution process by:
- Managing a designated bank account, calculating appropriate distribution amounts for each recipient and coordinating the disbursement of proceeds to creditors
- Tracking all disbursement activity
- Providing authorized users of KCC CaseView access to disbursement reports that include details of recipient data and bank account activity

 KCC

FEE STRUCTURE

**Consulting Services & Rates**[1]

| Position | Hourly Rate |
|---|---|
| *Analyst* | *$25.50 - $42.50* |

The Analyst processes incoming mail, including proofs of claim, ballots, creditor correspondence and returned mail. Also assists with the generation of mailing services.

| | |
|---|---|
| *Technology/Programming Consultant* | *$29.75 - $80.75* |

The Technology/Programming Consultant assists with complex system requests, including unique claim/ballot reporting and custom website updates.

| | |
|---|---|
| *Consultant/Senior Consultant/Senior Managing Consultant* | *$55.25 - $178.50* |

The Consultant is the day-to-day contact for mailings, including the preparation and filing of affidavits of service (a critical due process component). He/she also responds to creditor and counsel inquiries, maintains the public access website, identifies actionable pleadings (i.e., claims objections, notices of transfer, withdrawals, etc.) and updates the official claims register. KCC's Consultants average over six years of experience.

The Senior Consultant manages the various data collection processes required by the Chapter 11 process. This includes, among other things, compiling the creditor matrix and Schedules/SOFAs (and generating drafts of same for counsel and advisors), reviewing and processing claims, overseeing contract review, overseeing all mailings and generating custom claim and ballot reports. KCC's Senior Consultants average over seven years of experience.

The Senior Managing Consultant is the primary contact for the company, counsel and other professionals and oversees and supports the entirety of an engagement. KCC's SMCs average over twelve years of experience and are generally former practitioners.

| | |
|---|---|
| *Securities/Solicitation Consultant*[2] | *$174.25* |

The Securities Director/Solicitation Consultant is the day-to-day contact and acts as advisor on transactions including balloting with treatment election, rights offers, exchange offers and complex plan distributions. This position handles service of related materials to banks, brokers and agents and manages tabulation and audit processes, preparing detailed reporting of results. In addition, the Solicitation Consultant provides support on all voting, tabulation, Schedule and SOFA services and other additional complex consulting tasks.

| | |
|---|---|
| *Securities Director/Solicitation Lead* | *$182.75* |

The Solicitation Lead/Securities Director oversees all activities of the group and provides counsel with respect to solicitation and noticing events ensuring that processes employed are effective and practical for securities depositories, bank, brokers, nominees and their agents. In addition, the Solicitation Lead provides counsel on all voting, tabulation, Schedule and SOFA services and other additional complex consulting tasks.

| | |
|---|---|
| *Weekend, holidays and overtime* | *Waived* |

---

[1] Please note that additional professional services not covered by this proposal will be charged at hourly rates, including any outsourced services performed under our supervision and control.

[2] Certain events and technology development fees may be applicable.



# FEE STRUCTURE

## Printing Services & Noticing Services

| | |
|---|---|
| Printing | $0.08 per image (volume discounts apply) |
| Labels | Waived |
| Document folding and inserting | Waived |
| Envelopes | Varies by size |
| E-mail noticing | Waived[3] |
| Fax noticing | $0.08 per page |
| Claim Acknowledgement Card | Waived |
| Insert creditor information into customized documents | Waived |
| Newspaper and legal notice publishing | Quote prior to publishing |

## Claims Administration & Management Expenses

| | |
|---|---|
| License fee and data storage | $0.10 per creditor per month |
| Database and system access (unlimited users) | Waived |
| Custom client reports | Waived |
| Access to KCC CaseView (secure, password protected) | Waived |

- Proprietary, secured, password protected portal for unlimited users
- Comprehensive case data, including extensive real time analytics on claim, solicitation and processing information
- Functionality to run or request customized reports summarizing case analytics

## KCC eServices

| | |
|---|---|
| Case website set up & hosting | Waived |
| Automated updates of case docket and claims register | Waived |
| Online claims filing (ePOC) | Waived |

## Document Management/Imaging

| | |
|---|---|
| Electronic imaging (scanning & bar coding) | $0.10 per imaged page |
| Virtual Data Room | Quote prior to VDR set-up |
| CD-ROMS (mass document storage) | Varies upon requirements |

---

[3] A set-up fee for email services larger than 100 parties may apply. This set-up fee varies depending on the total number of parties.

 **FEE STRUCTURE**

**Call Center Support Services**

| | |
|---|---|
| Case-specific voice-mail box for creditors | Waived |
| Interactive Voice Response ("IVR") | Set-up and per minute fee waived |
| Monthly maintenance charge | Waived |
| Management of Call Center | Standard hourly rates |

**Disbursements**

| | |
|---|---|
| Check issuance | Quote prior to printing |
| W-9 mailing and maintenance of TIN database | See hourly rates and noticing charges |

# CORPORATE RESTRUCTURING

## NOTABLE MIDDLE MARKET ENGAGEMENTS

KCC's scalable platform enables economies of scale in operational capacity & technology bandwidth when needed. This benefits all chapter 11 and chapter 9 cases filed. Listed below is a representation of some of the middle market restructuring cases, based upon pre-petition assets, that KCC has recently helped efficiently navigate through the administrative process.



**FUSE MEDIA**
Jurisdiction: District of Delaware
Liabilities: $100M



**AIR FORCE VILLAGE WEST**
Jurisdiction: Central District of California
Liabilities: $77M



**PRODUCT QUEST MANUFACTURING**
Jurisdiction: Middle District of North Carolina
Liabilities: $162M



**HERITAGE HOME GROUP**
Jurisdiction: District of Delaware
Liabilities: $495M



**THE WALKING COMPANY HOLDINGS**
Jurisdiction: District of Delaware
Liabilities: $50M



**FIBRANT LLC**
Jurisdiction: Southern District of Georgia
Liabilities: $10M



**A'GACI**
Jurisdiction: Western District of Texas
Liabilities: $62M



**SCI DIRECT**
Jurisdiction: Northern District of Ohio
Liabilities: $35M



**AQUION**
Jurisdiction: District of Delaware
Liabilities: $27M

**EASTERN OUTFITTERS**
Jurisdiction: District of Delaware
Liabilities: $96M

For a complete list of KCC's clients or information about any of our services please contact us at 866.381.9100, info@kccllc.com or visit kccllc.com.




# OUR TECHNOLOGY

| TASK | DESCRIPTION | TIME SPENT | CLIENT COST |
|---|---|---|---|
| Mirror Pacer Court Docket | 100% automated scrape from Pacer with immediate display capability | 0 minutes | $0 |
| Docket Subscription | 100% automated. User sets parameters for what he/she receives and when. Cuts through noise | 0 minutes | $0 |
| Claims & Voting Reports | Reports available to client 24/7 or can be scheduled for automated email delivery | 0 minutes | $0 |
| E-POC Processing | User-tested design-based interface for ease of use and elimination of error; E-POCs automatically enter KCC's system eliminating manual inputs | 0 minutes | $0 |
| E-Ballot Processing | User-tested design-based interface for ease of use and elimination of error; E-ballots automatically enter KCC's system eliminating manual inputs | 0 minutes | $0 |
| Case Website Updates | Code-free tool for consultants to deploy real time updates; no technical assistance required | 0 minutes | $0 |
| Mobile | Fully mobile optimized website | | |
| Advanced Back-End System | Fully updated and advanced integrated back-end software reduces manual inputs, human error and billable time. Complements lower rates to drive cost savings | | |

KCC

# KCC's TECHNOLOGY + EXPERTISE = SAVINGS

Competitors claim that they have the most advanced technology in the market and that its technology drives client savings to the tune of hundreds of thousands of dollars.

THIS IS INACCURATE.

We have analyzed recent case filings of our competitors and normalized the publicly filed fees for (1) duration and (2) creditor body size. The data demonstrates that KCC's leading technology and experienced case teams continue to drive the most value to clients*

| DEBTOR | COMPETITOR 1 FEES | COMPETITOR 2 FEES |
|---|---|---|
| '18 Healthcare | 10% higher than comparable KCC case | 70% higher than comparable KCC case |
| '18 Retail | 40% higher than comparable KCC case | 23% higher than comparable KCC case |
| '18 Oil & Gas | 28% higher than comparable KCC case | 14% higher than comparable KCC case |

*Based on publicly available backup material




KCC



# Francine Gordon Durrer
## Managing Director

Francine is a veteran and pioneer of the chapter 11 bankruptcy and claims administration industry with more than 26 years experience. Francine's career began with the largest retail chapter 11 bankruptcy of its time, Revco D.S. Inc. From there Francine went on to manage the administration of many chapter 11 cases including PharMor, McCrory Stores and HomePlace Stores, Inc. Other representative engagements involve assisting a broad range of industries, including gaming, real estate, healthcare, manufacturing as well as experience with chapter 9 and 15 filings.

As a Senior Director of Corporate Restructuring Services at KCC, Francine works with clients to ensure they receive high-quality services tailored to their unique needs. In addition to being a key player on KCC's Business Development team, Francine brings first-hand knowledge in managing the complexities and challenges of claims administration and partners with clients to ensure a successful outcome.

As an active member in the industry, Francine has been recognized for her contributions by the International Women's Insolvency & Restructuring Confederation (IWIRC) who bestowed on her the Founders Award in 2008. She currently serves as an At Large Director for the International Board of IWIRC where she has also served as the Recruitment Director. In addition, Francine has served on the Steering Committee for the IWIRC NorthEast Ohio Chapter. She is also a longstanding member and supporting sponsor of the American Bankruptcy Institute, Turnaround Management Association and the AIRA. Prior to joining KCC, Francine was one of the chief executives of a national claims administration consulting firm.





# Albert H. Kass, J.D.
## Senior Executive Vice President

As Senior Executive Vice President, Albert drives the strategic direction of the company's client engagement initiatives. In addition, he oversees the business development professionals who lead regional campaigns to solidify KCC market leadership position in claims administration and noticing solutions.

Prior to his role as SEVP, Albert served as Executive Vice President of Corporate Restructuring guiding the strategic development and implementation of KCC's services, maximizing the scope and value of the company's suite of Chapter 11 service offerings. Previously, Albert represented debtors and official committees in Chapter 11 restructuring engagements as an associate in the Restructuring Group of Kirkland & Ellis LLP. While at the firm's New York office, he worked on cases including Calpine Corporation, Collins & Aikman Corporation, Solutia, Inc. and Wellman Inc.

Albert was recently recognized by the M&A Advisors for his outstanding contributions to the restructuring industry in their 2014 Annual 40 Under 40 Recognition Awards. Admitted to practice law in New York and New Jersey, Albert earned his Juris Doctor from Fordham University School of Law. While serving as an editor of the Fordham Urban Law Journal, he was awarded the Archibald R. Murray Public Service Award. Albert received his Masters in Public Administration from New York University Robert F. Wagner Graduate School and holds a Bachelor of Arts in History from the University of Michigan.





# Evan Gershbein, J.D.
Senior Vice President

As Senior Vice President, Evan oversees KCC's Corporate Restructuring division, including the consulting and operations departments. With over 10 years of experience, Evan provides an in-depth knowledge to the corporate restructuring process, which he uses to ensure that all of KCC's restructuring cases are properly staffed with the most experienced consultants best suited for the particular requirements of each case. Prior to his current position, Evan managed the claims administration and noticing process for dozens of clients, including Peabody Energy Corporation, Circuit City, Delphi Corporation, Hostess Brands, Magna Entertainment, New Century Financial, Overseas Shipholding Group and Workflow Management.

In addition to managing the most experienced consulting team in the industry, Evan oversees various committees to enhance the overall quality of KCC's client services. Evan works closely with the Technology department and steers their efforts to create new advancements and improve existing features to KCC's various technology platforms and websites. While driving KCC's Professional Development Committee, Evan also identifies and implements training programs and procedures to facilitate the professional growth of all corporate restructuring consultants. He also works directly with the Production department to ensure KCC's continued reputation for providing the highest quality noticing materials while utilizing the latest possible deadlines.

Admitted to practice law in California, Evan earned his Juris Doctor from Loyola Law School and holds a Bachelor of Arts degree in Philosophy from UCLA. Evan began his professional career as a judicial extern for the Honorable Vincent Zurzolo, Bankruptcy Judge for the Central District of California.





# Joseph Bunning
Director

As Director of Communications, Corporate Restructuring Services, Joseph oversees external communications to creditors, including the day-to-day operations of the call center and creation of key messages throughout the life of each case. In addition he provides assistance with special research projects, and in the analysis of claims and ballots.

Joseph has more than 15 years of experience in corporate restructuring and has been with KCC for six years. Prior to joining KCC, Joseph worked as a senior associate in corporate communications and investor relations for Sitrick and Company where he was directly involved in the firm's largest Chapter 11 filings including, Calpine, Delphi, U.S. Airways, Mirant, Peregrine Systems and Merco (U-Haul). In this role, Joseph drafted press releases, as well as other communication documents related to investors, employees, vendors and customers.

Joseph received a Bachelor of Science degree in Finance from the California State University, Northridge.





# Rebecca Cook
Senior Director

As Senior Director of Corporate Restructuring and Trustee and Fiduciary Services (TFS), Rebecca brings over 12 years of industry experience to the KCC Business Development team. Rebecca leverages her broad range of expertise in consumer and corporate bankruptcy matters to partner with clients seeking fiduciary administration services. Rebecca manages key client relationships and facilitates the growth of new client engagements. Prior to KCC, Rebecca worked as the National Account Executive for a software and fiduciary services provider.

Rebecca is a member of National Association of Bankruptcy Trustees (NABT), Turnaround Management Association (TMA), National Association of Federal Equity Receivers (NAFER), American Bankruptcy Institute (ABI), International Women's Insolvency Restructuring Confederation (IWIRC) and Association of Insolvency & Restructuring Advisors (AIRA). In addition, Rebecca held a sub-chair position for the technology committee with (NABT).



**EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

In re:                                           Chapter 11

THE COLLEGE OF NEW ROCHELLE,                     Case No.

                                Debtor.
------------------------------------------------------x

### DECLARATION OF EVAN GERSHBEIN IN SUPPORT OF APPLICATION FOR ORDER UNDER 28 U.S.C. § 156(c) AND RULE 5075-1 OF THE LOCAL BANKRUPTCY RULES APPOINTING KURTZMAN CARSON CONSULTANTS LLC AS NOTICE AND CLAIMS AGENT FOR THE DEBTOR

I, Evan Gershbein, do hereby declare and state as follows:

1.      I am Senior Vice President of Kurtzman Carson Consultants LLC ("KCC"), whose offices are located at 222 N. Pacific Coast Highway, 3rd Floor, El Segundo, CA 90245. Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      This Declaration is made in support of the Application for Order Appointing Kurtzman Carson Consultants LLC as Notice and Claims Agent for the Debtor (the "KCC Application"),[1] which is filed contemporaneously herewith.

3.      As agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), KCC will perform at the request of the Office of the Clerk of the Court (the "Clerk's Office") the noticing and claims related services specified in the KCC Application. In addition, at the Debtor's request, KCC will perform such other noticing, claims, technical and support services specified in the KCC Application.

---

[1]      All capitalized undefined terms shall have the meaning ascribed to them in the KCC Application.

4.      Although the Debtor has not yet filed its schedules of assets and liabilities, they anticipate that there will be thousands of entities to be noticed.  Local Rule 5075-1(b) provides that "[i]n a case in which the number of creditors and equity security holders, in the aggregate, is 250 or more, the estate shall retain, subject to approval of the Bankruptcy Court, a claims and noticing agent in accordance with the [Claims Agent Protocol]."  In view of the number of anticipated claimants, the Debtor submits that the appointment of a *claims and noticing agent* is required by Local Rule 5075-1(b) and is otherwise in the best interests of the Debtor's estate and its creditors.

5.      KCC represents, among other things, that:

a.      KCC is not a creditor of the Debtor;

b.      KCC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as an agent in this Chapter 11 case;

c.      by accepting employment in this Chapter 11 case, KCC waives any rights to receive compensation from the United States government;

d.      in its capacity as claims and noticing agent in this Chapter 11 case, KCC will not be an agent of the United States and will not act on behalf of the United States;

e.      in its capacity as claims and noticing agent in this Chapter 11 case, KCC will not misrepresent any fact to any person;

f.      KCC will not employ any past or present employees of the Debtor in connection with its work as claims and noticing agent in this Chapter 11 case;

g.      KCC shall be under the supervision and control of the Clerk's Office with respect to the receipt and recordation of claims and claim transfers;

h.      KCC will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

i.      none of the services provided by KCC as the claims and noticing agent shall be at the expense of the Clerk's Office.

6.      Although the Debtor does not propose to retain KCC under section 327 of the Bankruptcy Code pursuant to the Application, I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "Potential Parties in Interest") in these chapter 11 cases.  The list of Potential Parties in Interest was provided by the Debtor and included, among other parties, the Debtor, non-Debtor affiliates, current and former directors and officers of the Debtor, significant stockholders, secured creditors, lenders, the Debtor's 20 largest unsecured creditors, the United States Trustee and other persons employed in the office of the United States Trustee, and other parties.  The results of the conflicts check were compiled and reviewed by KCC professionals under my supervision.  At this time, and as set forth in further detail herein, KCC is not aware of any connection that would present a disqualifying conflict of interest.  Should KCC discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, KCC will use reasonable efforts to file promptly a supplemental declaration.

7.      To the best of my knowledge and based solely upon information provided to me by the Debtor, and except as provided herein, neither KCC, nor any of its professionals, has any materially adverse connection to the Debtor, its creditors or other relevant parties.  KCC may have relationships with certain of the Debtor's creditors as vendors or in connection with cases in which KCC serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor.

8.      KCC is an indirect subsidiary of Computershare Limited ("Computershare"). Computershare is a financial services and technologies provider for the global securities industry.  Within the Computershare corporate structure, KCC operates as a separate, segregated business unit.  As such, any relationships that Computershare and its affiliates maintain do not

3

create an interest of KCC that is materially adverse to the Debtor's estates or any class of creditors or security holders.

9.    KCC has and will continue to represent clients in matters unrelated to this chapter 11 case. In addition, KCC and its personnel have and will continue to have relationships in the ordinary course of its business with certain vendors, professionals and other parties in interest that may be involved in the Debtor's chapter 11 case. KCC may also provide professional services to entities or persons that may be creditors or parties in interest in this chapter 11 case, which services do not directly relate to, or have any direct connection with, this chapter 11 case or the Debtor.

10.    To the best of my knowledge, neither KCC nor any of its partners or employees represents any interest materially adverse to the Debtor's estates with respect to any matter upon which KCC is to be engaged. Based on the foregoing, I believe that KCC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

11.    KCC will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new facts or relationships are discovered, KCC will supplement its disclosure to the Court.

12.    In performing the services of claims and noticing agent, KCC will charge the Debtor the rates set forth in the KCC Agreement, which is attached as Exhibit A to the KCC Application. The rates set forth therein are at least as favorable as the rates that KCC charges in cases in which it has been retained to perform similar services.

13.    KCC will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information knowledge and belief.

El Segundo, CA
Dated: September 17, 2019

Evan Gershbein
Evan Gershbein
Senior Vice President
Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, California 90245
Telephone: (310) 823-9000

**PROPOSED ORDER**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:                                                          Chapter 11

THE COLLEGE OF NEW ROCHELLE,                Case No.

                                        Debtor.
-------------------------------------------------------x

### ORDER PURSUANT TO SECTION 156(c) OF TITLE 28 OF THE UNITED STATES CODE APPROVING THE APPOINTMENT OF KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS AND NOTICING AGENT

This matter coming before the Court on the Application for an Order Authorizing Retention and Employment of Kurtzman Carson Consultants LLC ("KCC") as noticing and claims agent, filed by the above-captioned debtor and debtor in possession (the "Debtor") on September 20, 2019 (the "Application"); the Court having reviewed the Application; the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); (b) consideration of the Motion and the relief requested therein are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A); (c) and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (d) due and proper notice of the Application having been provided to (i) the Office of the United States Trustee for the Southern District of New York and (ii) Office of the Clerk of the Court, and the Court having found such notice to be sufficient under the circumstances and that no other or further notice need be provided; (e) capitalized terms not otherwise defined herein have the meaning given to them in the Application; and (f) the relief requested in the Application being in the best interests of the Debtor and its estates and creditors; and the Court having reviewed the Application, and the Declaration of Evan Gershbein in support of the Application

and having heard the statements in support of the relief requested therein at a hearing before the

Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth

in the Application and at the Hearing establish just cause for the relief granted herein; and upon

all of the proceedings had before the Court; and after due deliberation and sufficient cause

appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Application is GRANTED to the extent provided herein.

2.      The Debtor is authorized to retain KCC effective as of the Petition Date under the

terms of the Engagement Agreement, and KCC is authorized and directed to perform noticing

services and to receive, maintain, record and otherwise administer the proofs of claim filed in

this chapter 11 case, and all related tasks, all as described in the Application (the "Claims and

Noticing Services").

3.      KCC shall serve as the custodian of court records and shall be designated as the

authorized repository for all proofs of claim filed in this Chapter 11 case and is authorized and

directed to maintain official claims registers for the Debtor, to provide public access to every

proof of claim unless otherwise ordered by the Court, and to provide the Clerk with a certified

duplicate thereof upon the request of the Clerk.

4.      KCC is authorized and directed to provide an electronic interface for filing proofs

of claim and to obtain a post office box or address for the receipt of proofs of claim.

5.      KCC is authorized to take such other action to comply with all duties set forth in

the Application.

6.      The Debtor is authorized to compensate KCC in accordance with the terms of the

KCC Agreement upon the receipt of reasonably detailed invoices setting forth the services

provided by KCC and the rates charged for each, and to reimburse KCC for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for KCC to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.    KCC shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtor, the U.S. Trustee, counsel for the Debtor, counsel for any official committee monitoring the expenses of the Debtor, and any party-in-interest who specifically requests service of the monthly invoices.

8.    The parties shall meet and confer to resolve any dispute which may arise relating to the KCC Agreement or monthly invoices; provided that the parties may seek resolution of the matter from this Court if resolution is not achieved.

9.    Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of KCC under this Order shall be an administrative expense of the Debtor's estate.

10.    KCC may apply its retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount, and thereafter, KCC may hold its retainer under the KCC Agreement during the chapter 11 case as security for the payment of fees and expenses incurred under the KCC Agreement.

11.    The Debtor shall indemnify KCC in accordance with the terms of the KCC Agreement, as modified pursuant to this Order.

12.    All requests by KCC for the payment of indemnification as set forth in the KCC Agreement shall be made by means of an application to this Court and shall be subject to review by this Court to ensure that payment of such indemnity conforms to the terms of the KCC Agreement and is reasonable under the circumstances of the litigation or settlement in respect of

which indemnity is sought; provided that in no event shall KCC be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

13.    In the event that KCC seeks reimbursement from the Debtor for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the KCC Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in KCC's own applications, both interim and final, but determined by this Court after notice and a hearing.

14.    In the event KCC is unable to provide the services set out in this order, KCC will immediately notify the Clerk and the Debtor's attorney and, upon approval of this Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtor's attorney.

15.    The Debtor and KCC are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application (including, without limitation, making copies of this Order, the Application, and any materials or other information related thereto available in any local language in a jurisdiction in which the Debtor operate, in each case at the Debtor's sole expense).

16.    Notwithstanding any term in the KCC Agreement to the contrary, this Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

17.    Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

4

18.     KCC shall not cease providing claims processing services during the chapter 11 case for any reason, including nonpayment, without an order of this Court.

19.     In the event of any inconsistency between the KCC Agreement, the Application, and this Order, this Order shall govern.

Dated: White Plains, New York
_____, 2019

ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE